DAVID S. McLANE (No.124952)
dmclane@mbllegal.com
McLANE, BEDNARSKI & LITT, LLP
975 East Green Street
Pasadena, California 91106
Tel: (626) 844-7660
Fax: (626) 844-7670

BRIAN A. VOGEL, SBN. 167413
Email: brian@bvogel.com
THE LAW OFFICES OF
BRIAN A. VOGEL, PC
770 County Square Drive, Suite 104
Ventura, California 93003
Telephone: (805) 654-0400
Facsimile: (805) 654-0326

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK ALLEN CANNAVAN, on behalf of himself and all others similarly situated, Provisional Class Members as defined by the Court,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF VENTURA, VENTURA COUNTY SHERIFF BILL AYUB, CECIL ARGUE, PATRICIA SALAS, ERIC DOWD, AND DOES 1-10, INCLUSIVE,<br><br>Defendants. | **Case No.:** 2:20-cv-10012-FMO (PVCx)<br><br>**FIRST AMENDED VERIFIED CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF:**<br><br>1) VIOLATION OF FIRST AMENDMENT RIGHT TO VOTE (42 U.S.C. §1983/28 U.S.C. 2241)<br><br>2) VIOLATION OF EQUAL PROTECTION CLAUSE UNDER FOURTEENTH AMENDMENT, ONE PERSON ONE VOTE (42 U.S.C. §1983/28 U.S.C. 2241)<br><br>3) VIOLATION OF CALIFORNIA CONSTITUTION (ARTICLE II, SECTION ONE (RIGHT TO VOTE |

4) DECLARATORY RELIEF (28 U.S.C. §§ 2201 AND 2202)

5) DECLARATORY RELIEF (CAL. CODE CIV. PROC. § 1060

**IMMEDIATE RELIEF SOUGHT**

FIRST AMENDED COMPLAINT

**CLASS ACTION COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

1.　　　Voting in a federal election is protected through the federal constitution as an expression of a person's First Amendment Rights, and the Equal Protection Clause of the Fourteenth Amendment.  Persons not convicted of felonies who reside in jail have rights under the federal constitution and the state constitution, CA. Constitution Article II, Section I, to vote.  *See* https://www.sos.ca.gov/elections/voting-resources/voting-california/who-can-vote-california/voting-rights-californians.

2.　　　The California Secretary of State, who is in charge of California State elections, explicitly states that, "Persons with a criminal history who can register to vote in county jail: serving a misdemeanor sentence," "a misdemeanor  never affects your right to vote."  *See*  https://www.sos.ca.gov/elections/voting-resources/voting-california/who-can-vote-california/voting-rights-californians. *See,* Exhibit A, "Voting Rights, Persons with Criminal History," by the Secretary of State.  Further, the Secretary of State states, "If you are in jail, you are entitled to receive a voter registration card if you are eligible to vote."  *Id.*  Finally, the Secretary of State states, "You may also apply to register to vote on the Secretary of State website RegisterTo/vote.ca.gov.  Your voter registration application must be received or post marked at least (15) days before Election Day to be eligible to vote in that election.  In elections coordinated by a county elections official, you can 'conditionally register and vote provisionally at your county elections office after the 15-day voter registration deadline.'"  *Id.*

3.　　　Plaintiff Patrick Allen Cannavan is an individual held at the Ventura County Todd Road Facility, located in Santa Paula, CA. As alleged in more detail below, he has requested his ballot, and the County Jail is obligated to provide him a ballot, allow him to timely vote, and deliver the ballot to the Ventura County

1

Registrar.  He wasis eligible to vote in the November 3, 2020 election, as he was over 18 and did not have a criminal record at the time of the election.  At the time of the request for a temporary restraining order filed on October 30, 2020, the County Jail had not provided him a ballot despite his request, and had informed him he would not receive a ballot.  As discussed below, this violated his First Amendment Rights and Right to Equal Protection under the United States Constitution, and his Right to Vote under Article II, Section 1 of the California Constitution.  If he had not been allowed to vote, he would have suffered irreparable harm.  If the policies, practices and customs of the VCJ are not changed as requested in this First Amended Complaint ("FAC"), he and others similarly situated, will suffer irreparable harm.

4.      Plaintiff has spoken to other inmates at the VCJ, who had been similarly denied their right to vote, and he estimated that there were, at the time of October 30, 2020,  at least 100 inmates who have requested their ballots, eligible to vote and were being denied their ballots for the November 3, 2020 election.  If they were not allowed to vote, they would have suffered irreparable harm.  They, and other inmates eligible to vote in Ventura County, will continue to suffer irreparable harm if policies are not changed in conformity with this FAC.  Thus, Plaintiff requests that this court certify this class to represent all eligible voters in Ventura County Jail.  Beside the Todd Road Facility in Santa Paula, there is the Main Jail on Victoria Avenue, which house eligible voters.  Each facility houses persons either with misdemeanors or are pre-trial detainees who have not been convicted of an offense, or are felons who have completed parole or on parole, and who are eligible to vote and are part of the proposed class.

5.      This is a First Amended Complaint, which is being filed to address current and future constitutional deficiencies discovered in voting for Ventura County Jail inmates as a result of prior litigation that resulted in a provisional class

certification ("PCC," Dkt. 20) and temporary restraining order ("TRO," Dkt. 21). The original complaint (Dkt. 1) was filed October 30, 2020.  On November 1, The Court required Defendant Ventura County provide absentee ballots to all eligible, registered voters in the jail who had requested ballots so that they could vote in the November 3, 2020 election by November 2, 2020, and deliver them to the Ventura County Registrar of Voters on the day of the November 3, 2020 election.  (DKT. 21).  In the PCC, the Court defined the class as, "[a]ll inmates housed at Ventura County Jail as of the date of this Order who are eligible to vote and requested ballots, so they can vote in the November 3, 2020 election."  (PCC, Dkt. 20).  The Court defined "eligible to vote" as "inmates who have registered to vote as of the date of this Order."  (PCC, Dkt. 20).  As a result of the Court orders, 78 Ventura County inmates, including Plaintiff Cannavan,  ended up voting in the November 3, 2020 election.  (Dkt. 30, Decl. of Assistant Sheriff Eric Dowd).

6.    This First Amended Complaint is being filed as a basis to request a preliminary injunction, and permanent injunctive relief because the procedures in place to ensure Ventura County inmates constitutional right to vote are constitutionally inadequate.

## JURISDICTION AND VENUE

7.    This is a civil rights action arising under 42 U.S.C. § 1983, 22 U.S.C. § 2241, and 28 U.S.C. § 2201, *et seq*., as well as the First and Fourteenth Amendments to the United States Constitution.

8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a), 28 U.S.C. § 2241.

9.    Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to these claims occurred and continue to occur in this district.

10.    Declaratory relief is proper under 28 U.S.C. §§ 2201 and 2202, and

Cal. Civ. Proc. § 1060.

11.    Government Code 910 claims are not required because Plaintiff Cannavan could not file a  910 claim and have it processed without suffering irreparable injury since he had been requesting an absentee ballot since June 3, 2020, and was not told until October 28, 2020 it was too late to get a ballot.  The original complaint was filed October 30, 2020, so that relief could be, and was obtained, so that Mr. Cannavan and provisional class members could vote in the November 3, 2020 election.  Thus, a 910 claim could not have been filed and processed before the election.  Further, a 910 claim is not required since Mr. Cannavan seeks only injunctive relief and attorneys' fees, not damages.  Similarly, Mr. Cannavan fully exhausted his administrative remedies, and to the extent he did not, such exhaustion would be futile as he had been requesting a ballot since June 3, 2020, and was only told October 28, 2020 he would not receive a ballot.   He did everything he could to receive a ballot and vote, and any further exhaustion would have been futile in light of the upcoming November 3, 2020 election.

## PARTIES

12.    Plaintiff Patrick Allen Cannavan is a 56-year-old male who currently resides in Ventura County, California. At all times relevant to this Complaint, Mr. Cannavan has been in the custody of the Todd Road Facility located in Santa Paula, CA in Ventura County, California. At the time of the filing of the original complaint, he had been deprived of his constitutional right to vote. This FAC is being filed after the November 3, 2020 election.

13.    Plaintiffs provisional class members are those designated in the PCC as defined by the Court in the PCC as "[a]ll inmates housed at Ventura Jail as of the date of this Order who are eligible to vote and requested ballots, so they can vote in the November 3, 2020 election." (PCC, Dkt. 20.)  The court defined "eligible vote" as "inmates who have registered to vote as of the date of this

Order." Plaintiffs request that the court expand the class definition to include:

> "All Ventura County inmates eligible to vote in future elections who have registered to vote by the day of the election as required by California law, and have asked for a ballot by the day of the election."

14. Defendant Ventura County ("County") is a public entity organized and existing under the laws of the State of California. The Ventura County Sheriff's Office ("VCSO") is, and at all times alleged herein, was an agency of the County of Los Angeles. Defendant County controls and operates the Ventura County's jails via the VCSO and Sheriff Bill Ayub. The County is responsible for the custody and care of all persons detained or incarcerated in the County's jails, and it currently has immediate custody over Plaintiff Patrick Cannavan (hereinafter "Plaintiff") and other provisionally certified class members. Ventura County is responsible to ensure that inmates and detainees voting rights are protected, and that eligible inmates be allowed to vote in elections. Ventura County, through the VCSO, maintains and operates the following detention and correctional facilities that has inmates eligible to vote in the election: Ventura County Main Pre-Trial Detention Facility located on Victoria Avenue, Ventura, CA, and Todd Road Facility located on Todd Road, Santa Paula, CA. This complaint and request for an emergency temporary restraining order and preliminary injunction covers all detainees in these two facilities eligible to vote.

15. Defendant Sheriff Bill Ayub is the Sheriff of the Ventura County Sheriff's Department and is being sued in his official capacity. As the Sheriff, Defendant Ayub has immediate custody of Plaintiff, and all people incarcerated in County facilities. Defendants Ayub is a policymaker for the County, and is responsible for developing, administering, and enforcing County policies, including those relating to ensuring all detainees eligible to vote can exercise their fundamental rights to vote.

16.     Defendant Cecil Argue, Inmate Program Manager, Inmate Services Unit, for the Ventura County Sheriff's Office, is in charge of the practices concerning inmate voting and ensuring inmates can vote in elections, is being sued in his official capacity.

17.     Defendant Patricia Salas, Commander of Ventura County Jail, Todd Road Facility, where Plaintiff Cannavan resided, was in charge of ensuring Mr. Cannavan timely received an absentee ballot and failed to do so, as well as ensuring other inmates at Todd Road could vote in the election and failed to do so, is being sued in her official capacity.

18.     Defendant Eric Dowd, the Ventura County Sheriff's Department supervisor in charge of Ventura County Detention Services Division, is responsible for ensuring inmates could vote in elections, and is the Supervisor in charge of the Main Jail, performing the role similar to Patricia Salas, is being sued in his official capacity.

19.     Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 10, inclusive, and therefore sue these Defendants by such fictitious names. Plaintiffs will give notice of this First Amended Complaint, and of one or more DOES' true names and capacities, when ascertained. Plaintiffs are informed and believe, and based thereon allege, that Defendants DOES 1 through 10 are responsible in some manner for the unconstitutional or illegal acts that occurred within Ventura County Jail which are complained of herein. This includes the formulation, promulgation, adoption, application, administration and enforcement of the policies, rules, regulations, and practices of the Ventura County Jails.  Upon information and belief, Plaintiffs further allege that, at all times relevant herein, Defendants participated in, approved, and/or ratified the unconstitutional or illegal acts that occurred within Ventura County  jails which are complained of herein. Plaintiffs are informed and

believe, and thereupon allege that, at all times relevant herein, the individual Defendants, and each of them, were the agents, servants and employees of their respective employers (Defendant Ventura County) and were acting at all times within the scope of their agency and employment with the knowledge and consent of their principals and employers. At all times herein, Defendants, and each of them, were acting under the color of state law.

## FACTUAL ALLEGATIONS

20.     There was a state and federal election on November 3, 2020, perhaps one of the most consequential elections in the history of this country. Not only were federal offices, including president and congressman were on the ballot, important California propositions were on the ballot that are impactful on a population in jail facing charges, such as Proposition 25, concerning cash bail, Proposition 20, concerning a roll back of prison reforms including Proposition 47 which classified some felonies as misdemeanors, such as drug possession, which is of immediate concern to pre-trial detainees facing criminal charges and how to resolve them, and Proposition 17, restoring the voting rights of people convicted of felonies who are on parole.

21.     As alleged herein, Plaintiff and provisional class members who were eligible to vote had been denied their right to vote by Defendant County, Defendant Argue, Defendant Salas, and Defendant Dowd.

22.     Plaintiff Patrick Allen Cannavan was incarcerated at the Todd Road Facility, part of the VCJ. He is a resident of Ventura County and has been incarcerated pretrial at VCJ for 843 days, as of the date of the election, or two years and three months approximately, awaiting trial on felony charges.

23.     . In the November 3, 2020 election he was eligible to vote. He recently pled guilty to felonies on February 8, 2021, and was sentenced to state

prison on March 11, 2021, so he is no longer eligible to vote.[1] But he is still an appropriate class representative because at the time of the filing of the original complaint he did not have a felony conviction and was eligible to vote, as verified by the Defendants, and did in fact vote in the November 3, 2020 election. He was eligible to vote, as he was over 18 years old, and did not have a felony conviction as of November 3, 2020. He applied for an absentee ballot and had been requesting an absentee ballot from officials at the Ventura County Jail since September 2019. He was informed by jail officials on numerous occasions that they would get him an absentee ballot, so he could vote in time for the Tuesday, November 3, 2020, election. Mr. Cannavan requested a ballot on June 3, 2020 and filed grievances and exhausted his administrative remedies by requesting his ballot on or about July 30, August 7, August 27, 2020.

24.     Sheriff officials told him on or about October 28, 2020, that they made a mistake and would not be able to get him an absentee ballot and deliver it to the county registrar so his vote would be counted on Tuesday, November 3, 2020 election . He would have suffered irreparable harm and damages if he was not allowed to vote on November 3, 2020.

25.     According to the declaration of Patricia Salas, County jail employee, Dkt. 16-2, a ballot was mailed to Mr. Cannavan at the jail. Mr. Cannavan did not receive any mail ballot by November 3, 2020 election day. He had not received a mail ballot prior to the 2020 election.

26.     Plaintiff is requested in his TRO application, Dkt. 5, on his behalf and all eligible voters in the County jail, that this Court order the County to 1) obtain his and all eligible voters in VCJ custody absentee ballots immediately, 2) notify

---

[1] Mr. Cannavan is still in county custody, and Plaintiff would request that the Court order that he remain there during the pendency of this litigation.  [Plaintiffs left in this footnote as it was set forth in the original submission of the proposed FAC with the motion for leave to amend.  Mr. Cannavan currently is an inmate at Avenal State Prison, a California Department of Corrections and Rehabilitation facility].

all inmates in VCJ who are have requested an absentee ballot or are eligible to vote that they can vote in the November 3, 2020 election,  3) deliver an absentee ballot to Plaintiff and any inmates in VCJ who have requested a ballot after being informed by VCJ officials that they can vote, no later than Monday, November 2, 2020 so that Plaintiff  and other VCJ detainees can fill out their absentee ballot, and 4) after completion, deliver to the Ventura County Voter's registrar his ballot and every other eligible VCJ detainee ballot no later than 5:00 p.m.  on November 3, 2020, so that all eligible VCJ detainees who desire to vote and fill out an absentee ballot are timely counted in this year's election.

27.    If the temporary restraining order was not granted, Plaintiff and all other detainees who were eligible to vote would have suffered irreparable harm as their fundamental rights to votes would have been violated. His and others equal protection rights would also be violated since they were eligible to vote in the November 3, 2020 election, and he should not be deprived of equal protection solely because he and other provisional plaintiffs are currently being detained in jail as of the November 3, 2020 election.

28.    Plaintiff is informed and believes that there were at least 100 other inmates in VCJ who had requested ballots and were eligible to vote, but had not received their ballots. He had not observed anyone at the Main Jail being able to fill out an absentee ballot.

29.    Plaintiff and others similarly situated, as a result of the PCC Order (Dkt. 20) are the TRO (Dkt. 21), granted by the Court on November 1, 2020, received a ballot and were able to vote, as were 78 other detainees. Without these orders, Plaintiff and the provisionally certified class' constitutional rights would have been violated and were violated up to the date of those Orders.

30.    Plaintiffs and the provisional class will suffer continuing irreparable harm unless this Court grants a preliminary and permanent injunction to ensure

that the County's inmate voting procedures comply with the State and Federal Constitutions.

31.   The current Ventura County procedures are constitutionally deficient as evidenced by the fact that but for this Court's intervention, at least 78 inmates would have been deprived of their constitutional right to vote in the November 3, 2020, election. Further, the actual procedures contained in the Ventura County inmate manual, which are far different than what is documented in the Cecil Argue declaration, (Dkt. 16-1), are constitutionally defective since they deprive Ventura County detainees of their right to vote.

32.   Attached as Exhibit B is the "Ventura County Sheriff's Office Detention Services Division Policy," Section 6, Chapter 10 are the actual Ventura County procedures that govern Ventura County procedures for inmate voting. The section on voting states:

> "W.   Inmates shall have the right to vote.
>
> 1. Qualified inmate voters shall have access to voting in local, state and federal elections through the County Registrar of Voters – Elections, pursuant to election codes.
>
> > a.  Voter registration cards and absentee ballot forms will be available to all inmates through Inmate Services. In order to vote, inmates must submit a "kite" to Inmate Services and request voting information and/or materials. Inmates will use the U.S. Mail to send out the voter registration cards. Inmates Services will forward the absentee ballot request form(s) to the County Registrar of Voters – Elections.
> >
> > b.  If any inmate is booked into the County Jail Facility after an absentee ballot request form cutoff date and wishes to vote in an upcoming election within Ventura County, Inmate Services

will sign an affidavit authorizing Inmate Services staff to obtain an absentee ballot for the inmate, and then return, by hand, the competed ballot to the County Registrar of Voters – Elections.

c. If an inmate has a disability that may prevent or interfere with him/her voting, Inmate Services will provide the appropriate assistance."

33.     This policy violates inmates' constitutional rights since it fails to require the VCSO to publicize or inform inmates of the procedures they need to follow to ensure that they register to vote, and actually vote timely.  The procedures are deficient because they fail to require the County to inform inmates of the deadlines to register and request a ballot. The procedures are constitutionally defective because they fail to ensure detainees, through no fault of their own, get their absentee ballot timely, and are able to timely vote and register to vote.

34.     The only information that any inmate receives is when they first enter the jail, they receive the Inmate Orientation Pamphlet, Exhibit C, which states that, "Voting.  Inmates who are eligible and interested in voting in any election may do so by submitting a KITE to Inmate Services requesting the necessary documents."  No further information is given prior to the election about what the inmate has to do to actually secure their ability to vote, and does not notify them of any timing deadlines.  The Orientation Pamphlet does not inform inmates of the eligibility requirements. The Pamphlet is in English, and plaintiff is informed and believes it is not translated into Spanish.

35.     The written policy does not detail what Inmate Services needs to do secure inmate voting rights.  The policy does not require the County to distribute written materials on how to vote; does not require the County to provide registration cards on a timely basis; and does not require the County to distribute

in person absentee ballots or collect them on a timely basis to ensure that inmates are allowed to vote, and does not provide for same day registration and voting as allowed by California law for eligible voters.  That is exactly what happened to Mr.  Cannavan and the provisional class certified by this Court.  Without the TRO, 78 persons would not have voted in the election who desired to exercise their franchise.  The TRO required that the County inform eligible inmate voters who were registered to vote and had requested a ballot that they could vote in the election; provide absentee ballots, and then deliver the ballots to the County Registrar on election day.  This is exactly what the provisional class requests the County to do going forward to ensure eligible inmate voters can vote in upcoming elections.

36.      The written policy is contrary to the so-called procedures outlined in the declaration of Cecil Argue, Dkt. 16-1, and the actual practices as evidenced with Mr. Cannavan, did not follow the procedures outlined in the Argue declaration,   The written policy indicates that voter registration cards will be mailed to the County registrar, the Argue declaration indicates the voter registration cards will be delivered in person [so it has to be by jail personnel] to the County Registrar.  The Argue declaration details step-by-step how inmates can vote, but none of those policies and practices are required in the written policy, and can change at the whim of jail personnel.  The Argue declaration details constitutionally deficient practices since the practices are not triggered until an inmate makes a request through a kite, and if the kite is not timely made, there is no provision for late registration and absentee ballot voting, or same day registration and voting.  Further, the informal practices outlined in the Argue declaration were not followed with Mr. Cannavan, as he was a registered voter, been requesting a ballot since June 3, 2020, and was told on October 28, 2020 it was too late to vote by absentee ballot.  The procedure followed by Ms. Salas as

outlined in her declaration conflicted with the Argue declaration, demonstrating that the Argue procedures are inadequate and are not complied with, as the Salas declaration indicated that the absentee ballot was mailed to Mr. Cannavan.   The Argue procedures are not set forth in the written policy, thus can be deviated with at any time.  The Argue declaration indicates the ballots are supposed to be picked up and delivered to the inmate to complete.  Mr. Cannavan never received the absentee ballot that was mailed to him by the County Registrar.  The actual written procedures do not require that absentee ballots are hand delivered to the inmate to fill out.  It only requires if an inmate is booked into custody after the absentee ballot request date has passed, the inmate can sign an affidavit for a late absentee ballot, and then deliver the ballot by hand to the County Registrar.  There are no procedures for same day registration as required by California state law.

37.    Further, there are no procedures in place to ensure that inmates have information on deadlines, voting procedures, voting eligibility, training of deputies and staff to ensure that voting procedures for inmates are followed and eligibility requirements are known by jail staff in the Inmate Services Unit, charged with assisting inmates and detainees in voting, or requirements that voting verbal or written materials are in Spanish and English, and that those voting procedures are prominently displayed in pods, day rooms, corridors and other places where inmates congregate during election season. There is also no procedure in place to ensure that absentee ballot requests are followed up on to ensure an inmate who has requested an absentee ballot actually receives one.

38.    The provisional class requests that the Court expand and modify the Class definition as follows

> "All Ventura County Inmates eligible to vote in future elections who have registered to vote by the day of the election as required by California law, and have asked for a ballot by the day of the election."

39.    The provisional class requests that the Court order the following changes in the written practices, policies and procedures, that are currently absent in the written policies, to ensure the Ventura County policies comply with the State and Federal Constitutions, and the Court should order written policies that state the following and accomplish Plaintiffs being able to exercise their Constitutional rights to vote:

a.    The County should inform all inmates in the jail before an election in a timely manner (at least four months before the election and during the pendency of the election) that all eligible voters can (a) register to vote; and, (b), vote in an election, by posting in each pod and other places frequented by detainees such as day rooms and corridors a bulletin or flyer with all the information they need to vote, including submitting a kite, the time requirements for requesting an absentee ballot or registering to vote, and the eligibility requirements to vote. The County should coordinate with the County Registrar to allow for same-day registration and voting for inmates.

b.    The County should inform all inmates all they need to do is submit a kite to trigger the process to vote in an election, and that all kites need to be logged and kept track of by Inmate Services, and they should do so by posting materials in their pods detailing how to vote.

c.    The County should inform all inmates the definition of eligible voters under state law, which would include all inmates over the age of 18, who are only charged with crimes and have no felony record, inmates who only have misdemeanor

convictions, and inmates who have felony convictions but have completed parole, or are on parole.

d.   The County must inform inmates of all cut-off dates to register to vote, which is 2 weeks before the election, at least 4 months before the election so inmates can receive voter registration cards, and register to vote.  The County must inform inmates as well of being able to register and vote on the day of the election ("same day registration").

e.   The County must collect voter registration cards on a timely basis, hand-deliver them to the County Registrar, and then at least two months before the election deliver the "Inmate Vote by Mail Ballot Application Form," so inmates will timely receive an absentee ballot.

f.   The County will track and keep a "send  list" of the inmates requesting to vote in the election, with their names, booking number, jail address, and facility location, provide it to the County Registrar, and the County Registrar will immediately determine if the inmate is eligible to vote.

g.   The "Inmate Vote by Mail Ballot Application Form," will be timely provided by the County Registrar to Inmate Services to be given to the inmates on a timely basis, filled out by inmates, will be timely delivered to the County Registrar, and Inmate Services will deliver ballots to those inmates who completed those forms, and collect the ballots and timely deposit them with the County Registrar by the day of the election.

h.   The County must have written procedures for late registration including day of election registration since State law provides

FIRST AMENDED COMPLAINT

for "same day" registration, within the two weeks of voting after the deadline for registration, as is required by California law for same day registration, and they must have procedures in place where it is the County's fault in processing their voting requests to ensure that detainees who are eligible to vote can vote.  The County should be ordered to permit for same day registration and voting as allowed by California law for all inmates who request ballots up to and including the day of election.

i.    The County must have a zero-tolerance policy for eligible inmates requesting ballots so that they do not have to file grievance after grievance to vote as plaintiff Cannavan did as detailed above.

j.    The County must have annual training by the County Registrar of Inmate Services employees charged with administrating voting for inmates so that they are fully aware of, and comply with, the revised County policies and procedures.  Staff should be instructed to assist detainees in exercising their right to vote, and be instructed that no retaliation or efforts to hinder an inmates right to vote will be tolerated and will subject the staff or deputy to discipline if such conduct occurs.  Staff shall ensure that detainees are informed in a safe, friendly and secure way that if they are eligible to vote their right to vote will be respected and the staff will assist detainees in exercising their rights to vote.

k.    All verbal and written materials containing voting instructions must be bilingual, in Spanish and English.

FIRST AMENDED COMPLAINT

l.      The County must provide inmates who vote a receipt of the fact they voted, and the County must keep records of who voted in elections, and provide those records to Plaintiff's counsel for a period of five years, and the Court shall retain jurisdiction over the case and injunctive relief for five years to ensure the County complies with the Court's injunctive relief orders.

m.      Inmate Services Unit shall be responsible for ensuring all of these orders are followed as they are the unit in Ventura County responsible for inmate voting.  They  should be required to circulate in the jails and wear buttons, "Want to vote, ask me," and speak to inmates in the four months leading to the election on a weekly basis or if asked by inmate how to vote.

## CLASS ACTION ALLEGATIONS

40.     The named Plaintiff brings this action on behalf of himself and all others similarly situated as a class action under Federal Rules of Civil Procedure 23(a) and 23(b)(2).

41.     Plaintiff Patrick Allen Cannavan seeks to represent a class of all current detainees in pretrial custody, at all County jails who, are eligible to vote in the November 3, 2020 election, and eligible to vote in future elections.  This Court already has granted provisional class certification on November 1, 2020, Dkt. 20. Plaintiff requests that the class certification be expanded to all inmates eligible to vote, not just inmates who have requested a ballot because sometimes the County and their agents fail to accept requests to vote, and also the State allows for same-day registration on the date of election.  Plaintiffs request the class be certified as follows:

"All Ventura County inmates eligible to vote in future elections who

17

have registered to vote by the day of the election as required by

California law, and have asked for a ballot by the day of the election."

42.     This action is brought and may properly be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the requirements of numerosity, commonality, typicality, and adequacy. Fed. R. Civ. P. 23(a).

43.     Plaintiff is informed and believes that as of October 30, 2020 there were at least 100 members of class in VCJ who were eligible to vote and requested ballots, which meets the numerosity requirement of Federal Rule of Civil Procedure 23(a). As a result of this Court's Orders, 78 detainees voted in the November 3, 2020 election who otherwise would not have been able to vote.

44.     Joinder of all members is impracticable, as class members are not ascertainable at this time to be joined on such short notice. Counsel for Plaintiff and the provisional class were not informed of the deprivation of Plaintiff's and other provisional class members' denial of their right to vote by failing to provide absentee ballots until October 29, 2020. Joinder in impracticable because the class members are numerous; the class includes future, unknown members, eligible to vote in future elections; and the class is fluid due to the inherently transitory nature of pretrial incarceration. Certifying the class supports judicial economy.

45.     Common questions of law and fact exist as to all members of the class respectively. The named Plaintiffs seek common declarative and injunctive relief concerning whether Defendants' policies, practices, and procedures violate the constitutional rights of the class members. These common questions of fact and law include, but are not limited to:

1) Whether Defendants' practices in failing to have adequate written procedures in place to ensure eligible detainees can vote in elections

violate Plaintiff and the provisional class members' fundamental rights to vote.

46.     Plaintiff's claims are typical of the class members' claims, because each of the provisional class members who was eligible to vote in the November 3, 2020 election would not have been provided a ballot, so they are deprived of their fundamental right to vote. Plaintiff and the provisional class members' claims all arise from the same core of conduct by Defendants, and are based on the same legal theories. All class members seek the same declaratory relief.

47.     The Plaintiff is an adequate representative of the class he shared with them the same interest in voting in the November 3, 2020 election. There are no known conflicts of interest among members of the proposed class, and the interests of the named Plaintiff does not conflict with the class members.

48.     Plaintiff is represented by counsel with experience and success in litigating complex civil rights matters in federal court. The interests of the members of the class will be fairly and adequately protected by the named Plaintiff and their attorneys.

49.     Because the provisional class challenges Defendants' system as unconstitutional through declaratory and injunctive relief that would apply the same relief to every member of the class, and Defendants have acted on grounds generally applicable to all proposed class members, certification under Rule 23(b)(2) is appropriate and necessary.

50.     A class action is a superior means, and the only practicable means, by which the named Plaintiff  and class members can challenge the Defendants' unconstitutional actions and obtain the necessary immediate declaratory and injunctive relief sought for themselves and all other members of the class.

/ / /

/ / /

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### (42 U.S.C. § 1983:  First Amendment Right to Vote -against all Defendants)

51.     Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 50 as if fully set forth in this Count.

52.     The right to vote is the "fundamental political right, because [it is] preservative of all rights."  *Yick Wo v. Hopkins,* 118 U.S. 356, 370 (1886).  "Undoubtably, the right of suffrage is a fundamental matter in a fee and democratic society."  *Reynolds.* Sims, 377 U.S. 533, 561-62 (1964).

53.     A prison official's objective deliberate indifference to a substantial risk of harm to a prisoner awaiting trial violates the Fourteenth Amendment.  *Gordon v. Cty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018).

54.     And when a case "calls[s] upon" the Court "to consider the constitutionality of [a burden on the right to vote] as applied [.]. . . [t]here is no 'litmus-paper test' to answer the[e] question" of constitutionality.  *Yan v. Kosinkski,* 960 F.3d 119, 129 (2nd Cir. 2020), *quoting Anderson v. Celebrezze,* 460 U.S. 780, 789 (1983).  Rather, the Court "conduct[s] a two-step inquiry that applies to election-related restrictions."  *Id.*  In the first sate, the Court evaluates the burden the restriction place on voters and in the second applies the sliding-scale, "*Anderson-Burdick* balancing test" if the restriction is not severe and "the more familiar test of 'strict-scrutiny if the restriction is severe.  *Id.*

55.     The burden on detainees who are dependent on County officials to obtain their ballots for them, and County defendants' failure to do so, is severe because Plaintiff and provisional class members are detained and cannot obtain absentee ballots on their own, and Defendants' failure to do so causes the ultimate sanction, preventing Plaintiffs from voting.  Thus, the deprivation is severe and subject to strict scrutiny.  Where the County Defendants are in a position to obtain

absentee ballots and fail to do so without justification, there is no compelling interest achieved by not honoring Plaintiffs' fundamental rights to vote and therefore unless they provide ballots immediately to all eligible detained voters in Ventura County custody, they will have irreparably caused damage to Plaintiffs.

56.     As a result of Defendants' unconstitutional actions, Plaintiffs would have suffered irreparable injury in not being able to vote in the November 3, 2020 election but for the intervention by the Court in granting the provisional class certification and temporary restraining order. The provisional class will continue to suffer irreparable injury due to the deficient voting policies of the County, and the injury is capable of repetition due to the constitutionally defective policies, these Plaintiffs are entitled to permanent injunctive relief.

57.     Defendant County, and individual defendants Ayub, Argue, Salas and Dowd, supervisors, direct participants and policy makers for Ventura County, have violated the rights of the Class under the First Amendment. Defendant County is directly responsible for the constitutional violations alleged herein.  In addition, the County's policies, customs and practices were, and continue to be, a moving force (*Monell*  violations) behind the constitutional violations by defendants Ayub, Argue, Salas and Dowd.

## SECOND CAUSE OF ACTION

### (42 U.S.C. § 1983:  Equal Protection and One Person/One Vote-against all Defendants)

58.     Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 57 as if fully set forth herein.

59.     The principle of "one person, one vote" requires that courts seek to "[e]nsure that each person's vote counts as much, insofar as it [i]s practicable, as any other person's" *Hadley v. Junior Coll. Dist. Of Metro. Kan. City,* 397 U.S. 50,

54 (1970).

60. And the Equal Protection Clause of the Fourteenth Amendment requires "that all persons similarly situated [] be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). Indeed, "[a]n early case in our one person, one vote jurisprudence arose when a State accorded arbitrary and disparate treatment to voters in is difference counties [and t]he [Supreme] Court found a constitutional violation. *Bush v. Gore,* 531 U.S. 98, 107 (2000), *describing Gray v. Sanders,* 372 U.S. 368 (1963).

61. The Supreme Court has also already ruled that, once absentee voting is part of the scheme for elections, all absentee votes must have similar guarantees that their votes count as much as possible, the same as any other person's. *O'Brien v. Skinner,* 414 U.S. 524, 530 (1974).

62. Plaintiffs are dependent on absentee ballots since they are detained against their will on jail, and particularly dependent on official actors, including the individual Defendants Ayub, Argue, Salas and Dowd, and Ventura County, to ensure that their votes will counts as much as possible, the same as any other person's. Without being provided their ballots by the County, they will not be able to vote at all, and they are "simply not allowed to use the absentee ballot and are denied any alternative means of casting their vote," and thus the Defendants' actions are unconstitutional. *O'Brien v. Skinner,* 414 U.S. 524, 430 (1974)(failure to provide absentee voter registration to people held in jail awaiting trial is unconstitutional).

63. Under the *Obrien v. Skinner* rule, the Defendants have violated Plaintiffs' rights, the Plaintiffs are more than likely to succeed on the merits, they will be irreparably harmed. The Court has issued, injunctive and declaratory relief in its class certification order (Dkt. 20) and temporary restraining order, (Dkt. 21), issued on November 1, 2020, and without those orders 78 eligible voters who were

already registered to vote would not have been able to vote.  Because the County voting procedures are already demonstrably defective, the Court must issue a preliminary and permanent injunction to require the County to enact constitutionally adequate procedures so detainees eligible to vote can exercise their fundamental rights to vote.   Defendant County is directly responsible for the constitutional violations alleged herein, as are Defendants Ayub, Argue, Salas and Dowd.  In addition, the County's policies, customs and practices were, and continue to be, a moving force (*Monell* violations) behind the constitutional violations by defendants Ayub, Argue, Salas and Dowd.

## THIRD CAUSE OF ACTION

### Violation of California Constitution Art. II § 1

### (Violation of Right to Vote under California Constitution- against all Defendants)

64.  Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 63 as if fully set forth herein.

65.  Defendants owe Plaintiffs a duty under Article II, section 1 of the California Constitution, which guarantees eligible voters their fundamental rights to vote under the California Constitution, which guarantees Plaintiffs to vote by absentee ballot.

66.  By the conduct described herein, Defendants violated these rights guaranteed to Plaintiffs. As a direct and proximate consequence of Defendants' conduct, Plaintiffs suffered a loss of their constitutional rights and are entitled to injunctive and relief.

67.  Defendants have been and are aware of all the deprivations complained of herein, and have condoned or been deliberately indifferent to such conduct.

/ / /

**FOURTH CAUSE OF ACTION**

**(Declaratory Relief:  28 U.S.C. §§ 2201 AND 2202- against all Defendants)**

68.     Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 67 as if fully set forth herein.

69.     There is an actual controversy between Plaintiffs and Defendants concerning their respective rights and duties in that Petitioner contends that the acts of Defendants, as described herein, are in violation of federal and state law, and Defendants contend in all aspects to the contrary.

70.     Plaintiffs are entitled to a legal declaration of their rights and Defendants' obligations under applicable federal and state law as alleged in this petition/complaint.

**FIFTH CAUSE OF ACTION**

**(Declaratory Relief:  CAL. CODE CIV. PROC. § 1060- against all Defendants)**

71.     Plaintiffs incorporate by reference each and every allegation contained in paragraphs 1 through 70 as if fully set forth herein.

72.     There is an actual controversy between Plaintiffs and Defendants concerning their respective rights and duties in that Petitioner contends that the acts of Defendants, as described herein, are in violation of federal and state law, and Defendants contend in all aspects to the contrary.

73.     Plaintiffs are entitled to a legal declaration of their rights and Defendants' obligations under applicable federal and state law as alleged in this petition/complaint.

Plaintiffs request relief, as set forth below.

.     WHEREFORE Plaintiffs and the Class Members respectfully request that the Court:

24

A. Certify this case as a class action and certify the proposed class; Enter a declaratory judgment that Defendants violation the Named Plaintiff's and Provisional Class Members' constitutional rights by failing to provide absentee ballots so that they could vote absentee in the November 3, 2020 election, and that the Defendants actions and policies violate Class Members constitutional right to vote;

B. Enter a preliminary injunction, and permanent injunction requiring Defendants in Ventura County jails to do the following, and develop written procedures detailing the following procedures:

    a.    The County should inform all inmates in the jail before an election in a timely manner (at least four months before the election and during the pendency of the election) that all eligible voters can (a) register to vote; and, (b), vote in an election, by posting in each pod and other places frequented by detainees such as day rooms and corridors a bulletin or flyer with all the information they need to vote, including submitting a kite, the time requirements for requesting an absentee ballot or registering to vote, and the eligibility requirements to vote.  The County should also inform all inmates that they can register to vote on the same day of the election and will provide a mechanism for them to do so.

    b.    The County should inform all inmates all they need to do is submit a kite to trigger the process to vote in an election, and that all kites need to be logged and kept track of by Inmate Services.

c.    The County should inform all inmates the definition of eligible voters under state law, which would include all inmates over the age of 18, who are only charged with crimes and have no felony record, inmates who only have misdemeanor convictions, and inmates who have felony convictions but have completed parole, or are on parole.

d.    The County must inform inmates of all cut-off dates to register to vote, which is 2 weeks before the election, at least 3 months before the election so inmates can receive voter registration cards, and register to vote.  The County must inform inmates as well of being able to register and vote on the day of the election ("same day registration").

e.    The County must collect voter registration cards on a timely basis, hand-deliver them to the County Registrar, and then at least two months before the election deliver the "Inmate Vote by Mail Ballot Application Form," so inmates will timely receive an absentee ballot.

f.    The County will track and keep a "send  list" of the inmates requesting to vote in the election, with their names, booking number, jail address, and facility location, provide it to the County Registrar, and the County Registrar will immediately determine if the inmate is eligible to vote.

g.   The "Inmate Vote by Mail Ballot Application Form," will be timely provided by the County Registrar to Inmate Services to be given to the inmates on a timely basis, filled out by inmates, will be timely delivered to the County Registrar, and Inmate Services will deliver ballots to those inmates who completed those forms, and collect the ballots and timely deposit them with the County Registrar by the day of the election.

h.   The County must have written procedures for late registration within the two weeks of voting after the deadline for registration, as is required by California law for same day registration, and they must have procedures in place where it is the County's fault in processing their voting requests to ensure that detainees who are eligible to vote can vote. The County should be ordered to permit for same day registration and voting as allowed by California law for all inmates who request ballots up to and including the day of election.  The County must ensure that persons arrested in the two weeks before the election and including election day are informed of their right to vote and ensure they vote if eligible.

i.   The County must have a zero-tolerance policy for eligible inmates requesting ballots so that they do not have to file grievance after grievance to vote as plaintiff Cannavan did as detailed above.

j.   The County must have annual training by the County

27

Registrar of Inmate  Services employees charged with administrating voting for inmates so that they are fully aware of, and comply with, the revised County policies and procedures.  Staff should be instructed to assist detainees in exercising their right to vote, and be instructed that no retaliation or efforts to hinder an inmates right to vote will be tolerated and will subject the staff or deputy to discipline if such conduct occurs.  Staff shall ensure that detainees are informed in a safe, friendly and secure way that if they are eligible to vote their right to vote will be respected and the staff will assist detainees in exercising their rights to vote.

k.  All verbal and written materials containing voting instructions must be bilingual, in Spanish and English.

l.  The County must provide inmates who vote a receipt of the fact they voted, and the County must keep records of who voted in elections, and provide those records to Plaintiff's counsel for a period of five years, and the Court shall retain jurisdiction over the case and injunctive relief for five years to ensure the County complies with the Court's injunctive relief orders.

m.  Inmate Services Unit shall be responsible for ensuring all of these orders are followed as they are the unit in Ventura County responsible for inmate voting.  They should be required to circulate in the jails and wear

buttons, "Want to vote, ask me," and speak to inmates in the four months leading to the election on a weekly basis or if asked by inmate how to vote.

C. Enter an order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 or as otherwise authorized by law;

D. Order such other and further relief as this Court deems just, proper, and equitable.

Respectfully Submitted,

Dated:  July 19, 2021                    McLane, Bednarski & Litt, LLP

By:  */s/ David S. McLane*
David S. McLane

Dated: July 19, 2021                    The Law Offices of Brian A. Vogel, PC

By*: /s/ Brian A. Vogel*
Brian A. Vogel

Attorneys for Petitioners/Plaintiffs

Counsel for Plaintiff, David S. McLane, verifies the allegations in this Complaint and is informed and believes the allegations are true and correct to the best of his knowledge based on information provided by Plaintiff and Co-counsel Brian S. Vogel, the PCC, TRO, and the declarations submitted concurrently herewith as well as the Secretary of State website.

Dated:  July 19, 2021          By: */s/ David S. McLane*
David S. McLane

basis or if asked by inmate how to vote.

    C. Enter an order and judgment granting reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 or as otherwise authorized by law;

    D. Order such other and further relief as this Court deems just, proper, and equitable.

Respectfully Submitted,

Dated:  March 26, 2021        McLane, Bednarski & Litt, LLP

                       By:  */s/ David S. McLane*
                             David S. McLane

Dated: March 26, 2021        The Law Offices of Brian A. Vogel, PC

                       By*:  /s/ Brian A. Vogel*
                             Brian A. Vogel

Attorneys for Petitioners/Plaintiffs

Counsel for Plaintiff, David S. McLane, verifies the allegations in this Complaint and is informed and believes the allegations are true and correct to the best of his knowledge based on information provided by Plaintiff and Co-counsel Brian S. Vogel, the PCC, TRO, and the declarations submitted concurrently herewith as well as the Secretary of State website.

Dated:  March 26, 2021   By: */s/ David S. McLane*
                           David S. McLane

# EXHIBIT A

# VOTING RIGHTS

Persons with a
Criminal History



VOTE CALIFORNIA
www.sos.ca.gov

## ELIGIBILITY REQUIREMENTS

You can register to vote and vote if you are:

- A United States citizen and a resident of California,
- 18 years old or older on Election Day,
- Not currently in state or federal prison or on parole for the conviction of a felony, and
- Not currently found mentally incompetent to vote by a court (for more information, please see Voting Rights: Persons Subject to Conservatorship).

PERSONS WITH A CRIMINAL HISTORY WHO
**CAN REGISTER AND VOTE:**

- In county jail:
  – Serving a misdemeanor sentence (a misdemeanor never affects your right to vote)
  – Because jail time is a condition of probation (misdemeanor or felony)
  – Serving a felony jail sentence
  – Awaiting trial
- On probation
- On mandatory supervision
- On post-release community supervision
- On federal supervised release
- A person with a juvenile wardship adjudication

PERSONS WITH A CRIMINAL HISTORY WHO
**CANNOT REGISTER AND VOTE:**

- Currently imprisoned in:
  – State prison
  – Federal prison
- Currently serving a state prison felony sentence in a county jail or other correctional facility*
- Currently on parole with the California Department of Corrections and Rehabilitation
  ○ Once you are done with parole your right to vote is restored, but you must re-register online at RegisterToVote.ca.gov or by filling out a paper voter registration card.

## ADDITIONAL INFORMATION

Under the 2011 Criminal Justice Realignment Act (Realignment) and specifically California Penal Code section 1170(h), low-level felons are sentenced to county jail and/or supervision by the county probation department instead of state prison. Realignment has caused some confusion about voting rights among people who have criminal convictions. The chart above provides an explanation of who can and who cannot register to vote in California.

*California Penal Code section 2910 allows the California Department of Corrections and Rehabilitation (CDCR) to make agreements with local governments to house felons in a county jail or other correctional facility. A person serving a state prison sentence who is housed in a local jail or other facility under these circumstances is not allowed to register and vote.

## QUESTIONS

If you are unsure of what type of sentence you are serving, ask your probation officer, parole officer, or staff at your correctional facility.



**California Secretary of State Alex Padilla**
Tel 916.657.2166 | Fax 916.653.3214 | www.sos.ca.gov

## HOW TO REGISTER TO VOTE

You may request a voter registration card from the Secretary of State or your county elections office. If you are in jail, you are entitled to receive a voter registration card if you are eligible to vote.

You may also apply to register to vote on the Secretary of State's website RegisterToVote.ca.gov. Your voter registration application must be received or postmarked at least fifteen (15) days before Election Day to be eligible to vote in that election. In elections conducted by your county elections official, you can "conditionally" register and vote provisionally at your county elections office after the 15-day voter registration deadline. For more information please go to the Secretary of State's webpage on conditional registration and voting (www.sos.ca.gov/elections/voter-registration/conditional-voter-reg/) or contact your county elections official.

Voter registration cards and voting materials are available in English, Chinese, Hindi, Japanese, Khmer, Korean, Spanish, Tagalog, Thai, and Vietnamese. Voter registration cards are available at most public libraries and government offices. See the attached list for state and local elections office contact information.

## VOTE BY MAIL

If you are already registered to vote at your current home address, you may request a vote-by-mail ballot application by contacting your county elections office. Once you receive your vote-by-mail ballot application, you must complete and return it to your county elections office at least seven (7) days before Election Day.

If you are not registered to vote at your current home address, you may register or re-register to vote and request a vote-by-mail ballot on the Secretary of State's website RegisterToVote.ca.gov.

## RELEASE FROM CUSTODY

If you requested a vote-by-mail ballot but are released from custody before you receive your ballot, you can still vote. Just go to the polling place for your home address or any polling place in the county where you are registered and vote a provisional ballot.

If you change your name, home address, mailing address, or party preference you must complete a new voter registration card.

## RESOURCES

For more information contact your county elections office or the California Secretary of State:

## VOTER HOTLINES

| | |
|---|---|
| English | (800) 345-VOTE (8683) |
| Español / Spanish | (800) 232-VOTA (8682) |
| Chinese / 中文 | (800) 339-2857 |
| Hindi / हिन्दी | (888) 345-2692 |
| Japanese / 日本語 | (800) 339-2865 |
| Khmer / ខ្មែរ | (888) 345-4917 |
| Korean / 한국어 | (866) 575-1558 |
| Tagalog | (800) 339-2957 |
| Thai / ภาษาไทย | (855) 345-3933 |
| Vietnamese / Việt ngữ | (800) 339-8163 |
| TTY/TDD | (800) 833-8683 |

# CALIFORNIA COUNTY ELECTIONS OFFICES

**ALAMEDA**
1225 Fallon Street, Room G-1
Oakland, CA 94612
(510) 272-6933

**ALPINE**
P.O. Box 158
Markleeville, CA 96120
(530) 694-2281

**AMADOR**
810 Court Street
Jackson, CA 95642
(209) 223-6465

**BUTTE**
155 Nelson Ave
Oroville, CA 95965-3411
(530) 538-7761

**CALAVERAS**
891 Mountain Ranch Road
San Andreas, CA 95249
(209) 754-6376

**COLUSA**
546 Jay Street, Suite 200
Colusa, CA 95932
(530) 458-0500

**CONTRA COSTA**
P.O. Box 271
Martinez, CA 94553
(925) 335-7800

**DEL NORTE**
981 H Street, Room 160
Crescent City, CA 95531
(707) 465-0383

**EL DORADO**
P.O. Box 678001
Placerville, CA 95667
(530) 621-7480

**FRESNO**
2221 Kern Street
Fresno, CA 93721
(559) 600-8683

**GLENN**
516 W. Sycamore Street
Willows, CA 95988
(530) 934-6414

**HUMBOLDT**
2426 6th Street
Eureka, CA 95501
(707) 445-7481

**IMPERIAL**
940 W. Main Street, Suite 206
El Centro, CA 92243
(442) 265-1060

**INYO**
P.O. Drawer F
Independence, CA 93526
(760) 878-0224

**KERN**
1115 Truxtun Avenue
Bakersfield, CA 93301
(661) 868-3590

**KINGS**
1400 W. Lacey Blvd.
Hanford, CA 93230
(559) 852-4401

**LAKE**
255 N. Forbes Street
Lakeport, CA 95453
(707) 263-2372

**LASSEN**
220 S. Lassen Street, Suite 5
Susanville, CA 96130
(530) 251-8217

**LOS ANGELES**
P.O. Box 1024
Norwalk, CA 90651-1024
(562) 466-1310

**MADERA**
200 W. 4th Street
Madera, CA 93637
(559) 675-7720

**MARIN**
P.O. Box E
San Rafael, CA 94913-3904
(415) 473-6456

**MARIPOSA**
P.O. Box 247
Mariposa, CA 95338
(209) 966-2007

**MENDOCINO**
501 Low Gap Road, Rm 1020
Ukiah, CA 95482
(707) 234-6819

**MERCED**
2222 M Street, Room 14
Merced, CA 95340
(209) 385-7541

**MODOC**
108 E. Modoc Street
Alturas, CA 96101
(530) 233-6205

**MONO**
P.O. Box 237
Bridgeport, CA 93517
(760) 932-5537

**MONTEREY**
P.O. Box 4400
Salinas, CA 93912
(831) 796-1499

**NAPA**
900 Coombs St Ste 256
Napa, CA 94559
(707) 253-4321

**NEVADA**
950 Maidu Avenue, Suite 250
Nevada City, CA 95959
(530) 265-1298

**ORANGE**
P.O. Box 11298
Santa Ana, CA 92711
(714) 567-7600

**PLACER**
P.O. Box 5278
Auburn, CA 95604
(530) 886-5650

**PLUMAS**
520 Main Street, Room 102
Quincy, CA 95971
(530) 283-6256

**RIVERSIDE**
2724 Gateway Drive
Riverside, CA 92507-0918
(951) 486-7200

**SACRAMENTO**
7000 65th Street, Suite A
Sacramento, CA 95823-2315
(916) 875-6451

**SAN BENITO**
440 Fifth Street, Room 206
Hollister, CA 95023-3843
(831) 636-4016

**SAN BERNARDINO**
777 E. Rialto Avenue
San Bernardino, CA 92415-0770
(909) 387-8300

**SAN DIEGO**
P.O. Box 85656
San Diego, CA 92186-5656
(858) 565-5800

**SAN FRANCISCO**
1 Dr. Carlton B. Goodlett Place,
Room 48
San Francisco, CA 94102-4635
(415) 554-4375

**SAN JOAQUIN**
P.O. Box 810
Stockton, CA 95201
(209) 468-2885

**SAN LUIS OBISPO**
1055 Monterey Street,
Room D-120
San Luis Obispo, CA 93408
(805) 781-5228

**SAN MATEO**
40 Tower Road
San Mateo, CA 94402
(650) 312-5222

**SANTA BARBARA**
P.O. Box 61510
Santa Barbara, CA 93160-1510
(805) 568-2200

**SANTA CLARA**
P.O. Box 611360
San Jose, CA 95161-1360
(408) 299-8683

**SANTA CRUZ**
701 Ocean Street,
Room 210
Santa Cruz, CA 95060-4076
(831) 454-2060

**SHASTA**
P.O. Box 990880
Redding, CA 96099-0880
(530) 225-5730

**SIERRA**
P.O. Drawer D
Downieville, CA 95936-0398
(530) 289-3295

**SISKIYOU**
510 N. Main Street
Yreka, CA 96097-9910
(530) 842-8084

**SOLANO**
675 Texas Street,
Suite 2600
Fairfield, CA 94533
(707) 784-6675

**SONOMA**
P.O. Box 11485
Santa Rosa, CA 95406-1485
(707) 565-6800

**STANISLAUS**
1021 I Street, Suite 101
Modesto, CA 95354-2331
(209) 525-5200

**SUTTER**
1435 Veterans Memorial Circle
Yuba City, CA 95993
(530) 822-7122

**TEHAMA**
P.O. Box 250
Red Bluff, CA 96080-0250
(530) 527-8190

**TRINITY**
P.O. Box 1215
Weaverville, CA 96093-1258
(530) 623-1220

**TULARE**
5951 S. Mooney Blvd.
Visalia, CA 93277
(559) 624-7300

**TUOLUMNE**
2 S. Green Street
Sonora, CA 95370-4696
(209) 533-5570

**VENTURA**
800 S. Victoria Avenue,
L-1200
Ventura, CA 93009-1200
(805) 654-2664

**YOLO**
P.O. Box 1820
Woodland, CA 95776-1820
(530) 666-8133

**YUBA**
915 8th Street, Suite 107
Marysville, CA 95901-5273
(530) 749-7855

# EXHIBIT B

## Ventura County Sheriff's Office
## Detention Services
## Divisional Policy



Section 6 Chapter 10
### Inmate Rights

**Drafted: August 13, 2012    Reviewed: November 7, 2017    Revised: January 1, 2018**

**PURPOSE:**

To provide inmates with a safe and secure environment as assured to them by the
U.S. Constitution and Title 15, Manual of Standards for Adult Local Detention Facilities.

---

**POLICY:**

**I.      GENERAL PROVISIONS**

    **A.**    A representative listing of inmate rights as listed in the "Manual of
Standards for Adult Local Detention Facilities" follows and has been
considered in the compiling of the Detention Services Divisional Policy
and Procedures Manual.

    **B.**    All personnel assigned to a detention facility shall be aware of these
rights and shall address any questions regarding them or conflicts with
facility security to a Facility Supervisor.

**PROCEDURE:**

**I.      STANDARDS FOR ADULT LOCAL DETENTION FACILITIES**

    **A.**    Inmates have the right to have access to the courts to challenge the
legality of their conviction or confinement, or to seek redress for illegal
conditions or treatment.

    **B.**    Inmates have the right to confidential access to attorneys and their
authorized representatives.

    **C.**    Inmates have the right to use the Law Library in order to complete legal
research.

    **D.**    Inmates have the right to protection from personal abuse and corporal
punishment.

    **E.**    Inmates have a right to a healthful environment which includes:

1.      Supervision of living units;

2.      Clean and orderly surroundings;

3.      Toilet, Showering/bathing, and hand washing facilities - Inmates shall be permitted to shower/bathe upon assignment to a housing unit (showering during the booking process satisfies this initial requirement) and at least every other day or more often if possible;

4.      Lighting, ventilation, and heating;

5.      Compliance with Federal, State and Local fire and safety regulations;

6.      Wholesome and nutritionally balanced diet;

7.      Clothing, mattress and bedding.

F.      Inmates have a right to basic medical and dental care.

G.      Inmates desiring medical treatment have the right to be afforded the same right to bodily integrity as provided in a community hospital facility.

H.      Inmates shall not be subject to medical or pharmaceutical testing for experimental or research purposes.

I.      Inmates voluntarily participating in non-medical and non-pharmaceutical testing shall be monitored and governed by a written agreement.

J.      Inmates have a right to recreational opportunities and equipment, including, when climate permits, outdoor exercise.

K.      Searches of an inmate or inmate housing areas shall be reasonable. The frequency and manner of the searches shall depend on health, safety and security considerations.

L.      Inmates shall not be subject to discrimination based on race, national origin, color, creed, sex, economic status, or political belief.

M.      Male and female inmates have the right to equal access to programs and services.

N.      Inmates shall have access to written rules specifying prohibited behavior and penalties.

O.  Inmates shall have access to a copy of "California Title 15 Division 1 & Public Information Plan". There will be one copy available in each housing unit and quad. The inmate may request to review it by submitting a kite. The inmate shall be placed in an interview room to review the document. Under no circumstances is an inmate allowed to take this document into their housing unit or quad.

P.  Inmates being charged with major or minor violations of facility rules have a right to be handled according to a disciplinary procedure as governed by Title 15, case law, and statutory law.

Q.  Inmates shall have the right to have access to an inmate grievance procedure.

R.  Inmates have the constitutional right to practice their religion, subject only to the limitations necessary to maintain order and security.

S.  Inmates have the right to receive visits, subject only to the limitations necessary to maintain order and security.

T.  Inmates have the right to communicate or correspond with persons or organizations, subject only to the limitations necessary to maintain order and security.

U.  Inmates have the right to make at least three local or collect long distance telephone calls to family members, friends or attorneys during the admissions process.

1.  There are currently two T. D. D. (Telecommunication Device for the Deaf) devices, for hearing impaired inmates available at the Pre- Trial Detention Facility. One is located in the Facility Sergeants Office (Level 1) and the other is located in Segregated Housing.

2.  The Segregated Housing TDD will be used in the Law Library where an electrical outlet is available for connecting the telephone. It shall not be set up for use at the Segregated Housing deputy's desk.

a.  The TDD is first plugged into the outlet and turned on.

b.  Connect the collect call phone to the TDD machine and dial #51. This is the speed dial number that automatically marks the "800" CA TDD relay number. The inmate can then communicate with the relay operator to connect to their desired number.

3.    At Todd Road Jail, one TDD is located in the Facility Supervisor's file cabinet drawer.

V.    Inmates shall have access to the public through the media, subject only to the limitations necessary to maintain order and security.

W.    Inmates shall have the right to vote.

1.    Qualified inmate voters shall have access to voting in local, state, and federal elections through the County Registrar of Voters - Elections, pursuant to election codes.

a.    Voter registration cards and absentee ballot forms will be available to all inmates through Inmate Services. In order to vote, inmates must submit a "kite" to Inmate Services and request voting information and/or materials. Inmates will use the U.S. Mail to send out the voter registration cards. Inmate Services will forward the absentee ballot request form(s) to the County Registrar of Voters - Elections.

b.    If any inmate is booked into the County Jail facility after the absentee ballot request form cutoff date and wishes to vote in an upcoming election within Ventura County, Inmate Services will sign an affidavit authorizing Inmate Services staff to obtain an absentee ballot for the inmate, hand-deliver the ballot to the inmate, and then return, by hand, the completed ballot to the County Registrar of Voters - Elections.

c.    If an inmate has a disability that may prevent or interfere with him/her voting, Inmate Services will provide the appropriate assistance.

# EXHIBIT C

# Ventura County Jails
## VENTURA COUNTY SHERIFF'S OFFICE
## INMATE ORIENTATION INFORMATION

### Revised: April 2018

**MEDICAL SERVICES:** All inmates can request medical, dental or/and psychiatric services by filling out a blue medical kite form. Each inmate will be seen by a medical, psychiatric or dental provider based on the blue kite request. If any inmate is seriously ill, he/she should immediately contact the nearest staff member.

Sick Call is conducted at all Ventura County Facilities Monday through Friday. Dental requests will be triaged through Sick Call and addressed based upon the severity of condition. The Dentist is available weekly at each facility. The inmate will be seen at the next available line. After each Sick Call visit, the inmate may be charged a $3.00 fee for any non-emergency medical or dental request. Medical/Dental treatment will be provided regardless of ability to pay. Inmates with no money on their account will have a negative balance created and will be adjusted accordingly when positive adjustments have been deposited in their account.

Pill Call is held seven days a week in the morning and evening. All oral medication shall be taken in front of staff members to make sure that all medication is swallowed.

**INSPECTION / CELL MAINTENANCE:** Every morning there is an inspection by facility staff to ensure that the inmate's cell and common dayroom areas are clean and orderly. Cleaning carts are provided for each section allowing inmates to clean their cells and common areas.

Telephone and TV privileges will be suspended until satisfactory completion of the morning inspection. Failure to keep cells and living areas clean throughout the day may result in the loss of privileges until the areas are cleaned to staff's satisfaction.

**CLOTHING AND BEDDING:** Each inmate is issued an outer shirt, T-shirt, pants, socks, underwear, and a pair of sandals. Additionally, female inmates are issued a sports bra, 2 extra pair underwear, and a nightgown. Inmates also receive a mattress, a blanket (blankets are re-issued every 90 days at inmate's request), two sheets, and a towel.

Inmates have the opportunity to change dirty clothing and bedding on a regular basis. MAJOR CLOTHING exchanges are conducted once a week; to include outer garments, underclothing, socks, sheets, a towel and a nightgown for males. MINOR CLOTHING exchanges are conducted one additional day each week, to include underclothing and socks.

**COMMISSARY:** Inmates with money in their account can buy items sold by the Jail Commissary weekly. Inmates may purchase up to $80.00 of commissary items and up to $40.00 of phone debit cards weekly. There are special ordering forms provided at booking.
• At the Pre-Trial Detention Facility, Commissary order forms are distributed Saturday evenings and collected Saturday nights, at count.

• At the Todd Road Jail, order forms are distributed Sunday evenings and collected on Sunday nights at count.
Inmates without money in their account may order a Commissary WELFARE PACKET weekly. Each WELFARE PACK contains one postage-paid post card, one postage-paid envelope with 2 sheets of paper, pencil with an eraser, shampoo, toothpaste, and a non-aspirin packet.

Inmates transferred between jail facilities will have their orders forwarded to the appropriate facility. Inmates who are transported between facilities and were not able to place a commissary order may be able to place a special order, with a sergeant's approval.

All profits from Commissary purchases and phone revenue provide funding specifically for Inmate Services, inmate vocational and educational programs, and recreational equipment in the facilities.

**VISITING:** Inmates may have two- 30-minute visits per week, with two people maximum per visit, including children. Visitors under 18 must be with a parent, grandparent, or legal guardian. A valid photo ID is required to enter the facility. Visits may be delayed or forfeited due to facility operations, or as a result of inmate discipline.

There is no expectation of privacy in the visiting area; all communication may be recorded or monitored in the visiting area. The only exception is for privileged communication (attorney/chaplain).

Visitation Phone Instructions: Visitor should not pick up the phone until after they are signaled by the inmate, if they do, the validation process will be interrupted and the inmate will have to start over again.
Inmate selects 1 for English, then enters their Inmate Booking Number followed by the 4 digit Security PIN. After entering these numbers, wait 5 seconds before signaling the Visitor to pick up their phone.

**DAYROOM TELEPHONES:** Telephones are located in each housing section. Inmates can make calls during their dayroom time. Incoming calls are not allowed. Inmates can call the Public Defender's Office at no cost by dialing *9005#. Inmates who damage telephones will receive disciplinary action and/or criminal prosecution.

There is no expectation of privacy inside the jail. The exception is for privileged communication. Communication may be recorded or monitored in the housing dayroom.

Phone cards may be purchased through commissary.

PIN numbers shall not be shared with other inmates. If the issued PIN number does not work, submit a KITE marked "phone".

**INMATE PHONES DIALING INSTRUCTIONS**
Pick up the phone, select 1 for English. To Make a Collect Call, press "0" . For a Debit Call press "2", For Call Rate information press "8". If 2 is pressed, enter the Inmate Booking Number, followed by the 4 digit Security Code. Next enter the area code and phone number. If "0" is selected, enter the Inmate Booking Number, followed by the Security PIN. Next enter the area code and phone number.

**INMATE MAIL:** Enveloped mail and Postcards are the only acceptable form of incoming mail. Incoming mail takes several days to process.

All incoming mail and postcards must be delivered to the PO Box, via the U.S. Postal Service and be addressed as follows: **Inmate's First & Last Name & Booking Number**
**P.O. Box 6929**
**Ventura, CA  93006**
A STAR Newspaper subscription should be mailed to:
**Inmate's First & Last Name & Booking Number**
**800 S. Victoria Ave.**
**Ventura CA  93009**
Incoming mail or postcards with incorrect, or no booking number will be returned to sender. There is no limit to the amount of mail an inmate may send or receive. However, excessive amounts of mail may constitute a fire hazard and may be placed in the inmate's property or mailed out at the inmate's expense.

Clearly discernible LEGAL mail will be opened and checked in the presence of the inmate.

Inmates can receive softbound books, magazines and periodicals through the mail only when received directly from publishers or authorized distributors. Publications including obscene literature or literature advocating or containing images depicting drugs, violence, or gangs, are not permitted. Any softbound book, magazine or periodical not from a publisher or an authorized distributor will be returned to the sender.

All outgoing mail shall have the inmate's return address (PO Box 6929, Ventura, CA 93006) inmates name, and booking number clearly written in the upper left-hand corner of the post card or envelope. *Inmates are allowed to mail letters using envelopes, postcards, and greeting cards purchased through commissary only.*

All items deemed to contain contraband or determined to be unacceptable, will not be delivered to the inmate but will be retained pending conclusion of the internal appeal process. Certain items will be destroyed if the item cannot be placed in the inmate's property (e.g. liquids, illegal contraband, etc.). In all cases in which incoming mail is withheld, the inmate and sender will receive a copy of a "Contents Unacceptable" form, generated by the Detention Mail Staff identifying the article, sender, and disposition. The sender will receive a "Notice of Appeal" which will explain the appeal process to the sender. In cases where inmate mail is not deliverable and placed into the inmate's property, the inmate will receive a copy of a "Content's Unacceptable" form.
**Any of the following will cause incoming mail to be returned to the sender or placed directly into an inmate's property:**
The following rules govern inmate mail privileges:
1. All correspondence must be clearly addressed.
2. Postcards may not be altered from their original form, including added layering, backing, wrappings, laminate, buttons, bows, glue or ribbons.
3. No gang codes or markings will be accepted. Outgoing correspondence, of that nature, will be given to Classification for review.
4. No drugs or other contraband may be enclosed in the mail.
5. Enveloped mail or postcards may not be marked with paint, heavy crayon, foil, heavy ink, glitter, staples, labels, cloth, string, watermarks, stains, or stickers (excluding US Postage Stamps).

6. Enveloped mail or postcards cannot contain any perceived biohazard, i.e., lipstick, gloss, scents, etc.

7. Publications, photographs, postcards, and letters cannot show images, artwork, or photographs of exposed genitalia, buttocks or female breasts and/or graphic depictions of sexual acts. Medical, anthropological, literarily artistic and scientific journals and publications are not prohibited.

8. Correspondence or pictures that tend to incite violence, riot, racism or threaten the security of the facility will not be accepted.

9. Blank postcards, envelopes, writing paper, greeting cards, or postage stamps will not be accepted.

10. Magazines/newspapers/books/booklets will not be accepted unless sent from the publisher or directly from an authorized retail distributor.

11. Publications or letters may not contain wire, spiral bindings, pens, pencils, or any other items determined to be inappropriate or unacceptable for safety or security reasons.

12. Only Government checks from Local, State or Federal entities are accepted, and only if they are in an official envelope from the issuing agency.

13. Any publications with the appearance of writings or illustrations that are believed to contain obscenity, violence, hatred, or other jail security compromises will not be delivered to the inmate.

14. During this process the following items will be removed from all mail: Industrial staples (if removal of industrial staple will damage the article it will be returned), standard staples (unless they are used to bind publications), paper clips, metal clamps, clasps, wire, currency and drugs.

NOTE: Inmates shall not possess excessive amounts of paper products. Inmates' personal books, magazines, newspapers and mail must be able to fit in their commissary box. Newspapers must have the inmate's name on the subscription label. This excludes religious material, a newspaper, Bible, and GED independent study material. This does not apply to legal mail. Extra items will be sent to inmate property or be subject to the inmate's agreed upon voluntary destruction. Only one issue of the newspaper is allowed, except on Mondays, due to weekend deliveries. (Newspapers must have inmate's name on the subscription label). Inmate's personal books, magazines, newspapers and mail must be able to fit in their Commissary box.

**E-MAIL:** Inmates may receive E-Mail. E-mail bundles can be purchased by directing people to the Sheriff's website. www.vcsd.org

**STATE PRISON:** Inmates who have been sentenced to State Prison, or those returning to State Prison, should only take the following items with them to prison:
1. Legal materials
2. Personal papers, letters, photographs (contained in one legal sized manila envelope)
3. Any medically prescribed health care appliances
**4. Funds** (issued by check upon transfer)
Money remaining in an inmate's account will be sent with them in the form of a check.

It is encouraged that all of an inmate's property not listed above be picked up at the Pre-Trial Detention Facility Public Reception (visiting) Counter. A picture ID, such as a California Driver License or valid ID Card is required to pick up property. If an inmate's home address listed at time of booking is outside of Ventura County, arrangements may be made to mail their property and clothing to the out-of-county address, at the inmate's expense

**LEGAL ACTIVITIES / LAW LIBRARY:** Inmates are provided access to the courts, counsel, and to other resources to adequately enable them to pursue any necessary legal activities including:
· Access to the Public Defender's Office via correspondence, telephone, or visits.
· Access to counsel by un-monitored phone calls.
· Uncensored and unrestricted correspondence with attorneys and approved legal assistants.
· Reasonable visitation with attorneys and certified legal assistants.
· Access to a law library to pursue basic legal research.

A computerized law library is available for inmates. Inmates (including Pro Per) must request the use of the law library by submitting a Law Library KITE. Legal forms may be requested by submitting a KITE to Inmate Services. You must provide the form name and number, which can be found in the Law Library

THE DETENTION SERVICES LEGAL UNIT DOES NOT PROVIDE LEGAL RESEARCH, LEGAL ADVICE OR LEGAL ASSISTANCE TO INMATES.

**CLASSIFICATION AND HOUSING:**
Inmates will be classified and housed in a manner to allow for the maximum safety and security of the jail facility. Any questions regarding classification and or housing can be directed to the Classification Unit.

**COURT APPEARANCES:** Inmates will be notified of their court date during the booking process.

**RECREATION:** Recreational activities are available to inmates weekly. These may include, but are not restricted to, basketball, handball, static machines (PTDF only), card games, and television.

**CLASSES:** GED, Educational, Vocational, Substance Abuse, and other classes are available to inmates who qualify. A program flyer with information about classes is available to inmates. Participation in classes can be requested by sending an Inmate Request Form (KITE) to Inmate Services.

**LIBRARY:** A variety of books are available for inmates to read; book carts are available in each housing area. Any graffiti, note, contraband, or inappropriate material found in any book taken and then returned to the book cart and/or any graffiti or damage found on the book cart itself may result in the entire Housing Unit losing reading privileges for one week. Consistent violations of this policy may lead to additional loss of reading material.

**VOTING:** Inmates who are eligible and interested in voting in any election may do so by submitting a KITE to Inmate Services requesting the necessary documents.

**RELIGIOUS ACTIVITIES:** Chaplain's office provides Sunday church services for inmates. Individual counseling, group bible study, pastoral counseling, and visits by representatives of an inmate's faith are also available by submitting a KITE to the Chaplain. Inmates may also request other special religious services or literature from a wide range of religious groups.

Inmates who experience a death or serious illness in their immediate family may notify staff and submit a KITE to the Chaplain for counseling and information regarding the possibility of a temporary stay of sentence.

Inmates requiring special diets due to religious beliefs should submit a KITE to the Chaplain for review.

**DISCIPLINARY VIOLATIONS:** Any violation of the law or jail rules regulating inmate conduct and/or behavior may result in disciplinary and/or criminal action against the inmate.
Violations of Facility Rules are classified as either "MINOR" or "MAJOR" depending on the seriousness of the violation. Four (4) MINOR violations within a 30-day period will result in a MAJOR violation. While in disciplinary segregation, two (2) MINOR violations within a 30-day period will result in a MAJOR violation.

MINOR violations may result in a verbal advisement or assignment of extra work. MAJOR violations may result in one or more of the following: loss of commissary and/or visits, removal from work status, loss of good time and/or or work time, assignment of extra work, time in disciplinary segregation with or without disciplinary diet. When an inmate receives a write-up, they are given a written notification of the violation. In the case of a MAJOR violation, inmates are given 24 hours to prepare a defense. At the disciplinary hearing, the inmate is given the opportunity to explain their actions. If an inmate decides to waive their 24 hours, the hearing may be held anytime within a 24-hour period. However, the hearing must occur within 72 hours of the written notification being made.

An inmate must advise the Senior Deputy at the time of their hearing of the name(s) of other inmates who may be a witness to the incident and who may provide information on their behalf.

An inmate is entitled to the assistance of an advisor when the inmate is deemed to be incapable of handling their disciplinary case.

**GRIEVANCES:** A grievance is a written complaint regarding an inmate's treatment while in custody. The grievance may be a complaint about custody or medical treatment. It can be used to question a policy, rule, procedure or to appeal an inmate's classification or disciplinary finding. Grievances shall pertain to one issue per form. Content, which is disrespectful toward staff, is subject to disciplinary process. The Facility Manager will be notified of any inmate who submits an excessive amount of grievances, or files frivolous grievances. The Facility Commander determines when an inmate files excessive or frivolous grievances and will designate a unit or staff member for handling. The inmate will be notified in writing when this occurs.

If the inmate does not feel the response is satisfactory, the grievance may be appealed to the next level. All previously answered comments and appeals on the same matter must be included upon each appeal.

Inmates shall not fill out grievance forms on issues that involve their court cases. "A Writ of Habeas Corpus" is the correct form for dealing with the courts. A "Writ" may be obtained by submitting a KITE to Inmate Services. Multiple copies of the "Writ" will be given since inmates are not given access to a photo copy machine nor will jail staff provide any copying services for inmates.

**COUNTY PAROLE:** Ventura County operates a county parole system which allows eligible inmates to apply for an early release from custody as a locally supervised parolee. The eligibility requirements, regulations and the application are available by turning in a kite addressed to the County Parole Advisor. The Public Defender may be able to assist you with filling out the application.